# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| PETER ARMOUR, | :: | MOTION TO VACATE |
|    Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:19-CR-0294-WMR-RGV-3 |
| UNITED STATES OF AMERICA, | :: | |
|    Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:20-CV-4077-WMR-RGV |

## FINAL REPORT AND RECOMMENDATION

This matter is before the Court on Peter Armour's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 93], as supplemented, [Doc. 96]; and the government's response, [Doc. 102], as supplemented, [Docs. 104 & 106]. For the reasons that follow, it is **RECOMMENDED** that Armour's § 2255 motion be **DENIED**.

## I.  PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a four-count indictment against Armour and two co-defendants, charging Armour in Count Two with possessing a machinegun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). [Doc. 12]. On August 8, 2019, Armour, represented by court-appointed counsel Paul M. Cognac ("Cognac"), was arraigned and releases on bond. [Doc. 19].

Approximately four months later, on December 3, 2019, Armour entered a non-negotiated guilty plea. [Docs. 59 & 99].

At the plea hearing, Armour confirmed that he had rejected the government's plea offer, which would have contained an appeal waiver and obligated the government to recommend that he be sentenced at the low end of the sentencing guidelines range. [Doc. 99 at 5-6]. Armour was then placed under oath and affirmed that he understood the rights he was giving up by pleading guilty and that he was willing to waive those rights. [Id. at 6, 8-11]. Armour confirmed that no one had promised him a specific sentence and that no one had threatened or forced him to plead guilty. [Id. at 11-12]. Armour also acknowledged that he had sufficient time to discuss this matter fully with his attorney before entering his guilty plea and that he was satisfied with his attorney's representation. [Id. at 13].

Next, Armour confirmed that he understood the elements of the offense to which he was pleading guilty, i.e., that he possessed a machine gun, which is defined to "include any weapon that shoots, is designed to shoot or can readily be restored to shoot multiple shots automatically without manual reloading by a single function of the trigger," and that he knew it was a machine gun or knew the characteristics of it that made it a machine gun as defined by federal law. [Id. at 14]. The government then summarized what the evidence would show if the case

went to trial, including that: (1) Armour's co-defendant communicated with a confidential informant ("CI") about purchasing a machine gun; (2) Armour met with the CI on May 16, 2019, and had a rifle in his possession, which Armour referred to as "fully automatic"; (3) Armour gave the gun to the CI, and money changed hands; (4) the gun was later tested and fired "multiple shots automatically without manual reloading by a single function of the trigger"; and (5) the gun did this multiple times, malfunctioning on some of the firing attempts. [Id. at 16-17]. When asked by the Court whether those facts were true and whether he brought "a gun to be sold to the [CI] that could be classified as a machinegun because of its characteristics," Armour responded, "[y]es, sir, but . . . [he] didn't actually know that it was a fully automatic" and that he "had just stated that to receive more money." [Id. at 17-18]. Armour clarified that he understood that, by pleading guilty, he was "taking responsibility for . . . knowingly [selling] an automatic weapon, a machinegun." [Id. at 20]. Armour stated that he was concerned about the video evidence of him referring to the weapon as fully automatic and confirmed that he understood what the government would have to prove if the case went to trial and that he wanted to plead guilty "in hopes of receiving a more favorable outcome than if the case were to go to trial." [Id. at 22, 24].

Armour faced a possible maximum sentence of ten years of imprisonment. [Id. at 25]. The Court explained that it would consider the Sentencing Guidelines but was free to impose a sentence more or less severe than the advisory guidelines range. [Id. at 26-30]. Armour understood that he could not withdraw his plea if his sentence was more than he expected. [Id. at 32]. The Court accepted Armour's plea, noting that Armour claimed that he did not know the gun was automatic but was pleading guilty in the hopes of obtaining a more favorable sentence than if the case went to trial. [Id. at 33-34].

At sentencing, the Court found that Armour "knew what he was selling" but granted him a two-level reduction for acceptance of responsibility and determined that his guidelines range was twenty-four to thirty months of imprisonment. [Doc. 100 at 30, 33-34]. The Court sentenced Armour at the middle of that range to twenty-seven months of imprisonment and, at the request of the parties, allowed Armour to voluntarily surrender. [Id. at 48, 55-56; Doc. 74]. Armour did not appeal.

Armour timely filed this pro se § 2255 motion, arguing that Cognac provided him ineffective assistance by failing to: (1) explain to him, before he entered his guilty plea, that he "had to 'know' that the firearm was fully automatic"; (2) file an appeal; and (3) seek an independent expert to show that the gun had been known

to malfunction and, thus, was not fully automatic. [Doc. 93 at 3-12]. The government responds that Armour has failed to show deficient performance by counsel or prejudice. [Doc. 102 at 13-14; Docs. 104 & 106].

## II.  DISCUSSION

A. <u>**Legal Standards**</u>

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982) (footnote omitted). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. <u>See</u> <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court

5

must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The analysis is two-pronged.  However, a court need not address both prongs "if the defendant makes an insufficient showing on one."  Id. at 697.  A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him.  In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted).  Counsel is required to provide

6

defendant sufficient information to make an informed and knowing decision to plead guilty, including "all of the information counsel had (and reasonably should have had)" and must offer defendant "reasonable advice" based on that information. Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam). Armour has the burden of affirmatively proving prejudice. Gilreath v . Head, 234 F.3d 547, 551 (11th Cir. 2000). Additionally,

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

**B.  Ground One: Counsel's Advice Regarding Plea**

Armour first claims that Cognac did not explain to him that the government would have to prove that he knew the gun was automatic. [Doc. 93 at 3-7]. This claim is belied by the record. It is clear from the plea hearing transcript that Armour understood that knowledge was an element of his offense and that the government's video evidence of his statement that the gun was "fully automatic" motivated him to enter a plea rather than proceed to trial. [Doc. 99 at 14, 16-17, 22]. Armour

7

acknowledged on the record that he knew what the government would have to prove if the case went to trial and that by pleading guilty he was taking responsibility for knowingly selling a machinegun, and he opted to plead guilty in order to potentially receive a lighter sentence. [Id. at 20, 24].

Armour has not met his "heavy burden" to show that the statements he made during his plea colloquy were false, and his after-the-fact assertion that counsel did not inform him that he had to know that the gun he possessed was automatic is insufficient to rebut the presumption that those statements were true and correct. Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam). Therefore, Armour has not shown deficient performance by counsel. Armour has also failed to prove prejudice because he has not alleged that, but for Cognac's allegedly incomplete advice, he would not have pled guilty and would have insisted on going to trial. Accordingly, Armour is not entitled to relief on ground one.

C.  **Ground Two: Counsel's Failure to File an Appeal**

Next, Armour contends that Cognac failed to file an appeal, even though Armour had informed Cognac "that he wanted an appeal filed." [Doc. 93 at 8]. In the supplement to his § 2255 motion, Armour clarifies that, in June or July of 2020, approximately three to four months after he was sentenced on March 5, 2020, he "texted Mr. Cognac to get an appeal to stay free and due [sic] my time on supervised

release." [Doc. 96 at 7].  Armour asserts that it was "unreasonable for counsel to presume that [he] did not want to file a direct appeal." [Doc. 93 at 10].

The government has submitted Cognac's declaration, in which Cognac states that, during the fourteen days after sentencing in which an appeal could be filed, Armour "never asked [him] to appeal the conviction or sentence in his case, and [Armour] did not file an appeal on his own behalf or ask the court to file an appeal on his behalf." [Doc. 104-1 ¶ 4].  Cognac asserts that Armour did not mention an "appeal" until July 1, 2020, when Armour, who was still on bond, sent Cognac two text messages.  [Id. ¶ 5].  In the first text, Armour asked Cognac to "file a motion allowing him to work at a new job at Sun Trust [P]ark"; and the second text, which was sent a few hours later, stated that Armour "would like to file an appeal due to corona." [Id.].  Given the context of those texts, including that the time for filing a direct appeal had expired, Cognac understood them to mean that Armour sought "more flexible bond conditions" and to delay "his voluntary surrender date, due to the coronavirus." [Id. ¶ 6].

On July 9, 2020, Cognac filed a motion to extend Armour's voluntary surrender date for an additional thirty days due to the "ongoing COVID-19 pandemic," [Doc. 89], and a motion to modify Armour's bond conditions to allow him to work the new job at Sun Trust Park, [Doc. 90].  The Court granted the

9

motion to modify Armour's bond conditions, [Doc. 91], but denied the motion to extend his voluntary surrender date, [Doc. 92].

Armour has not alleged that he timely instructed Cognac to file a direct appeal. Accordingly, the Court must consider whether Cognac consulted with Armour about an appeal by advising him "about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000). In his second declaration, Cognac states that he met with "Armour early on the day of his sentencing" and "discussed his appellate rights" but did not consult with "Armour immediately after the sentencing hearing." [Doc. 106-1 ¶¶ 3, 6]. Because the record does not indicate whether Cognac's consultation with Armour prior to sentencing was constitutionally adequate, the Court must determine whether Cognac "had an affirmative duty to consult" with Armour concerning an appeal. Thompson v. United States, 504 F.3d 1203, 1207 (11th Cir. 2007). The "constitutionally imposed duty to consult" arises when either (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). Lastly, the Court must consider whether Armour has shown prejudice, i.e., "that there is a

reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484.

There is no indication in the record that Armour reasonably demonstrated to Cognac an interest in appealing. In fact, Cognac states in his second declaration that Armour texted him later in the day after his sentencing to ask about "being able to pay his special assessment off during his incarceration" but did not ask "any other questions, . . . ask to meet with [Cognac] or set up a telephone call, and did not express any interest in filing an appeal." [Doc. 106-1 ¶ 7]. It is also not apparent that a rational defendant would want to appeal. At sentencing, the Court sustained Armour's only objection to the presentence report, granted him a two-level reduction for acceptance of responsibility, and sentenced him at the middle of his guideline range to twenty-seven months of imprisonment, well below the ten-year statutory maximum. [Doc. 100 at 30, 33-34, 48]. Armour has not identified any nonfrivolous grounds for appeal, and Cognac asserts that "he did not believe there were any even arguably meritorious issues to raise on appeal," [Doc. 106-1 ¶ 8]. Armour has not replied to either of Cognac's declarations and has not shown that there is a reasonable probability that he would have timely appealed had Cognac adequately consulted with him about his appellate rights. Therefore, Armour is not entitled to relief on ground two.

**D.     Ground Three: Counsel's Failure to Hire an Expert**

Finally, Armour contends that, on the day of his sentencing, he asked counsel to hire an expert to show that the gun was not fully automatic because it had been known to malfunction, and counsel ignored his request. [Doc. 93 at 11-12; Doc. 96 at 6]. Federal law defines a machinegun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). It is no defense to a charge of possessing a machinegun that the gun may occasionally malfunction. See United States v. Olofson, 563 F.3d 652, 658 (7th Cir. 2009) ("[T]he argument that a weapon is not a machinegun merely because it *stopped firing* due to a malfunction [is foreclosed]; indeed, the reason a weapon ceased firing is not a matter with which § 5845(b) is concerned."). In any event, during its summary of what the evidence would show at trial, the government noted that the gun had malfunctioned on some of the firing attempts during testing but, on several attempts, had fired "multiple shots automatically without manual reloading by a single function of the trigger." [Doc. 99 at 17]. Thus, expert testimony was not necessary to establish that the gun had been known to malfunction since it was acknowledged by the government on the record, and

Armour has not shown deficient performance by counsel or prejudice for failing to obtain and present expert testimony on this point.

### III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."  A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  Based on the foregoing discussion of Armour's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

### IV.  CONCLUSION

13

For the reasons stated, **IT IS HEREBY RECOMMENDED** that Armour's § 2255 motion, [Doc. 93], as supplemented, [Doc. 96], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 9th day of April, 2021.

_____
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE